IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEENAN WILKINS, also known as Nerrah Brown,<br><br>       Plaintiff,<br><br>  v.<br><br>C. JOKSCH, et al.,<br><br>       Defendants. | No. 2:18-CV-2518-MCE-DMC-P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Defendant Joksch has filed an answer, ECF No. 72. Pending before the Court are Defendant Foulk's motion to dismiss, ECF No. 73, Plaintiff's opposition, ECF No. 74, and Defendant Foulk's reply, ECF No. 75

**I. PLAINTIFF'S ALLEGATIONS**

This action proceeds on Plaintiff's first amended complaint. Plaintiff names the following as defendants: (1) C. Joksch, correctional officer at High Desert State Prison and (2) Freddie Foulk, Warden at High Desert State Prison. See ECF No. 71, pg. 2. Plaintiff alleges that on or around December 26, 2013, Plaintiff "was erroneously sent to High Desert State Prison (HDSP) which does not have a EOP mental health program." Id. at 3. In January of 2014

1  Plaintiff "was told he was level 3 and would be transferred to a level 3 EOP mental health
2  program." Id. However, "HDSP officials did not move Plaintiff to the level 3 yard but kept him
3  housed on the level 4 yard while awaiting transfer to a level 3 EOP mental health program." Id.
4  at 3-4. Plaintiff alleges that he was housed with general population inmates in violation of CDCR
5  policy and procedure. See id.

6  "In March 2014 a violent level 4 inmate was moved from his building to Plaintiff's
7  building." Id. at 4. Officer Joksch attempted to place the inmate with other level four inmates,
8  but the other level four inmates objected. Id. at 5. "Officer Joksch then placed this level 4 inmate
9  into the cell with Plaintiff over his objection (policy violation). The inmate began making
10 unwanted sexual advances against Plaintiff." Id. Because of this "Plaintiff requested
11 (confidentially to avoid harm for snitching) he be removed from this cell." Id. But "Officer
12 Joksch refused to take action." Id.

13 On March 12, 2014, "Plaintiff sent a confidential request to Warden Freddie Folk
14 [sic] seeking to speak to him as he was '. . . put in a situation I am not in agreement with against
15 my will . . .'" Id. at 5-6. (errors in original). Plaintiff alleges Defendant Foulk received
16 Plaintiff's request for help but failed to respond. Id. at 10.

17 "That evening, while using the restroom the level four inmate caught Plaintiff with
18 his pants down and 'raped him'." Id. at 6. (errors in original). Plaintiff alleges that he was
19 threatened that he would be killed if he yelled or reported the matter. See id. The next day
20 Plaintiff attempted to be moved out of the cell but was again denied. See id. at 7. That same day
21 "Plaintiff was again raped and made to do other unspeakable sexual acts . . . ." Id.

22 The following day, March 14, 2014, "Plaintiff refused to reenter the cell and was
23 moved to cell 109 with another level 4 general population inmate. This inmate began forcing
24 Plaintiff to do unspeakable sexual acts as well." Id.

25 "Plaintiff 'confidentially' again reported to CCI Hellwig and on 4/4/14 Plaintiff
26 was taken to classification and made 'single cell' status." Id. at 7-8.
27 / / /
28 / / /

2

1    "Plaintiff asserts imminent danger in CDCR's failure to conduct adequate screening for inmates 'prior' to forced double celling." Id. at 8. Plaintiff also asserts that "he was subjected to excessive risk to his safety, exposed to dangerous conditions with deliberate indifference and endured cruel and unusual punishment." Id.

Plaintiff alleges his injury was a result of Defendants Cates and Foulk failure to train staff on CDCR policy. See id. at 9-10. Plaintiff alleges that Defendant Foulk failed to train his staff in CDCR policy mandating that EOP and general population inmates are not housed together. Id. at 9. Plaintiff alleges Cates failed to train his staff in relation to required "standardized admin committee process" requiring inmates be "specifically matched together and agree in writing to be celled together" before double celling inmates. Id. at 10.

## II.  STANDARD OF REVIEW

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The Court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual

3

1 | allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56.  The
2 | complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Id.  at
3 | 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the
4 | court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
5 | Iqbal, 129 S. Ct. at 1949.  "The plausibility standard is not akin to a 'probability requirement,' but
6 | it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting
7 | Twombly, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a
8 | defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement
9 | to relief."  Id. (quoting Twombly, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The Court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

"The Supreme Court has instructed the federal courts to liberally construe the inartful pleading of pro se litigants.  It is settled that the allegations of [a pro se litigant's complaint] however inartfully pleaded are held to less stringent standards than formal pleadings drafted by lawyers."  See Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987) (citation and internal quotation marks omitted; brackets in original).  The rule, however, "applies only to a plaintiff's factual allegations."  See Neitzke v.Williams, 490 U.S. 319, 330 n.9 (1989).  "'[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled.'"  See Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

/ / /

Further, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

### III.  DISCUSSION

Defendant Foulk moves to dismiss Plaintiff's First Amended Complaint because it fails to allege facts showing Defendant Foulk's personal involvement in any constitutional violation, and because it does not allege facts showing Foulk can be liable to Wilkins under the Eighth Amendment for failing to protect him, for failing to supervise staff, or for failing to train staff. See ECF No. 73, pg. 1. Additionally, Defendant Foulk moves to dismiss Plaintiff's first amended complaint because Foulk is entitled to qualified immunity, and because Plaintiff lacks standing for injunctive relief. Id.  Because the Court finds the issue dispositive, the undersigned only discusses whether Plaintiff properly connected Defendant Foulk to a constitutional violation.

To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

Supervisory personnel, such as Warden Foulk, are generally not liable under § 1983 for the actions of their employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983).  A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed

the violations.  See id.  The Supreme Court has rejected the notion that a supervisory defendant can be liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct because government officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct and not the conduct of others.  See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).  Supervisory personnel who implement a policy so deficient that the policy itself is a repudiation of constitutional rights and the moving force behind a constitutional violation may, however, be liable even where such personnel do not overtly participate in the offensive act.  See Redman v. Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).

When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." Iqbal, 662 U.S. at 676.

Plaintiff's first amended complaint alleges that Defendant Foulk is the Warden of HDSP.  See ECF No. 71, pg. 2.  He is sued in his individual and his official capacities.  See id. Plaintiff alleges that on March 12, 2014, he sent a "confidential request to Warden Freddie Folk [sic] seeking to speak to him as he was '. . . put in a situation [he is] not in agreement with against [his] will . . .'" Id. at 6. Plaintiff alleges Defendant Foulk received the request, but Defendant Foulk ignored it. Id. at 10. Plaintiff's complaint further alleges that Foulk failed to train his staff in CDCR policy mandating that EOP and general population inmates are not housed together. There are no other allegations regarding Foulk.

The undersigned recommends dismissing Plaintiff's claims against Defendant Foulk.  The first amended complaint fails to state a claim against Foulk because there are no facts showing that Foulk was aware of Plaintiff's concerns or had any involvement with Plaintiff's housing assignment during March 12-14, 2014. The only allegation involving Foulk is the vague notice of an alleged "situation" to which Plaintiff was not in agreement. There are no facts that

Foulk was otherwise aware that Plaintiff was in danger. The complaint does not link Foulk to any affirmative act or omission that could violate Plaintiff's rights. Therefore, Plaintiff's complaint fails to state a claim as to Defendant Foulk. The undersigned recommends providing Plaintiff an opportunity to amend his claims against Defendant Foulk.

## IV.  CONCLUSION

Based on the foregoing, the Undersigned recommends that:

1. Defendant Foulk's motion to dismiss, ECF No. 73, be granted; and

2. Plaintiff be given an opportunity to file a second amended complaint or elect to proceed only as against Defendant Joksch, who has filed an answer to the first amended complaint.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  April 14, 2023

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE