# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEENAN WILKINS, also known as Nerrah Brown,<br><br>    Plaintiff,<br><br>    v.<br><br>C. JOKSCH, et al.,<br><br>    Defendants. | No. 2:18-CV-2518-DC-DMC-P<br><br>FINDINGS AND RECOMMENDATIONS |

       Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court are Defendant Foulk's motion to dismiss, ECF No. 87, Plaintiff's opposition, ECF No. 99, and Defendant Foulk's reply, ECF No. 100.

       In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The Court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).

1  In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers.
2  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

3  Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement
4  of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair
5  notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly,
6  550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order
7  to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain
8  more than "a formulaic recitation of the elements of a cause of action;" it must contain factual
9  allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56. The
10 complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at
11 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the
12 court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
13 Iqbal, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but
14 it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting
15 Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a
16 defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement
17 to relief." Id. (quoting Twombly, 550 U.S. at 557).

18 In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials
19 outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998);
20 Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The Court may, however, consider: (1)
21 documents whose contents are alleged in or attached to the complaint and whose authenticity no
22 party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question,
23 and upon which the complaint necessarily relies, but which are not attached to the complaint, see
24 Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials
25 of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir.
26 1994).
27 / / /
28 / / /

2

"The Supreme Court has instructed the federal courts to liberally construe the inartful pleading of pro se litigants. It is settled that the allegations of [a pro se litigant's complaint] however inartfully pleaded are held to less stringent standards than formal pleadings drafted by lawyers." See Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987) (citation and internal quotation marks omitted; brackets in original). The rule, however, "applies only to a plaintiff's factual allegations." See Neitzke v.Williams, 490 U.S. 319, 330 n.9 (1989). "'[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled.'" See Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

Further, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

## I. BACKGROUND

### A. Procedural History

On April 17, 2023, the Court issued findings and recommendations addressing a prior motion to dismiss in this case. See ECF No. 77. As to Plaintiff's allegations against Defendant Foulk, the Court stated:

> Plaintiff's first amended complaint alleges that Defendant Foulk is the Warden of HDSP. See ECF No. 71, pg. 2. He is sued in his individual and his official capacities. See id. Plaintiff alleges that on March 12, 2014, he sent a "confidential request to Warden Freddie Folk [sic] seeking to speak to him as he was '. . . put in a situation [he is] not in agreement with against [his] will . . .'" Id. at 6. Plaintiff alleges Defendant Foulk received the request, but Defendant Foulk ignored it. Id. at 10. Plaintiff's complaint further alleges that Foulk failed to train his staff in CDCR policy mandating that EOP and general population inmates are not housed together. There are no other allegations regarding Foulk.
>
> The undersigned recommends dismissing Plaintiff's claims against Defendant Foulk. The first amended complaint fails to state a claim against Foulk because there are no facts showing that Foulk was aware of Plaintiff's concerns or had any involvement with Plaintiff's housing assignment during March 12-14, 2014. The only allegation involving Foulk is the vague notice of an alleged "situation" to which Plaintiff was not in agreement. There are no facts that Foulk was otherwise aware that Plaintiff was in danger. The complaint does not link Foulk to any affirmative act or omission that could violate Plaintiff's

> rights. Therefore, Plaintiff's complaint fails to state a claim as to Defendant Foulk. . . .

ECF No. 77, pgs. 6-7.

The Court recommended that the motion be granted, and that Plaintiff be provided an opportunity to file a second amended complaint as to his allegations against Defendant Foulk or file an election to proceed on his cognizable claims against Defendant Joksch.[1] See id. The District Judge adopted the findings and recommendations in full on August 30, 2023. See ECF No. 83. Plaintiff filed his second amended complaint on September 29, 2023. See ECF No. 84. Defendant Foulk filed the currently pending motion to dismiss on February 22, 2024. See ECF No. 87. After being granted numerous extensions of time, Plaintiff filed an opposition on October 28, 2024. See ECF No. 99. Defendant Foulk filed a reply on November 12, 2024. See ECF No. 100.

### B.    Plaintiff's Allegations

Plaintiff alleges from March 12, 2014, through April 4, 2014, Plaintiff "was incarcerated under conditions posing a substantial risk of harm." ECF No. 84, pg. 6. Plaintiff asserts that on or around December 26, 2013, Plaintiff "was transferred to High Desert Prison IN ERROR as he was an Enhanced Outpatient (EOP) inmate level of care and High Desert had no EOP program." Id. Plaintiff "went to classification and was put up for transfer to an EOP program." Id. at 6–7. Plaintiff alleges the "[p]rison [a]dministrators let Plaintiff continue to remain housed with the 'Level 4' general population inmates, despite the fact that he was a 'Level 3' EOP inmate." Id. at 7.

In March of 2014, "a violent level 4 inmate was moved from his building to Plaintiff's building." Id. "Officer Joksch attempted to house this 'Blood Gang Member' into a cell with another level 4 'Blood Gang Member.'" Id. Plaintiff alleges that he was housed with general population inmates in violation of CDCR policy and procedure. See id.

---

[1]    Defendant Joksch is deceased. By separate order, the Court will set a deadline for Plaintiff's motion to substitute following final resolution of the pending motion by Defendant Foulk.

In the same month, Plaintiff alleges "a violent level 4 inmate was moved from his building to Plaintiff's building." Id. Officer Joksch attempted to place the level four inmate with another level four inmate, but the other level four inmates objected. See id. "Officer Joksch then subjected Plaintiff to harm and violated policy by placing this Level 4 GP 'Blood Gang Member' in the cell with him, a level three EOP inmate… over his express objection." Id. at 8.

Plaintiff asserts "[t]he inmate began making unwanted sexual advances against Plaintiff." Id. Because of this, "Plaintiff requested (confidentially to avoid harm for snitching) he be removed from this cell." Id. But "Officer Joksch and other 'Doe' Officers… refused to take action." Id.

On March 12, 2014, "Plaintiff sent a Confidential CDCR Form 22 to Warden Freddie Folk seeking to speak to him as he was '. . .' put in a situation I am not in agreement with against my will . . .'" Id. at 8–9. "Officer Joksch signed the request and continued to allow Plaintiff to remain in the unsafe housing." Id. at 9. "Warden Foulk never responded from 3.12.14 to 4.24.14." Id.

"That evening, while using the restroom the level four inmate caught Plaintiff with his pants down and 'raped him.'" Id. Plaintiff alleges that he was threatened that he would be killed if he yelled or reported the matter. See id. The next day Plaintiff requested from C8 building officers to be moved out of the cell but was again denied. See id. On the same day "Plaintiff was again raped and made to do other unspeakable sexual acts. . . ." Id.

The following day, March 14, 2014, "Plaintiff refused to reenter the cell and was moved to cell 109 with another level 4 general population inmate. . . . The new Level 4 GP inmate also began forcing Plaintiff to do unspeakable sexual acts against his will from on or around 3/14/14 to 4/4/14." Id. at 9–10. (errors in original).

"Plaintiff daily requested (confidentially to avoid being killed) that building C8 officers… move him out of the cell but he was denied." Id. at 10. "Plaintiff 'confidentially' AGAIN reported to CCI Hellwig and on 4/4/14 Plaintiff was taken to classification and made 'single cell' status until he left High Desert on 4.24.14." Id.

///

       "Plaintiff asserts imminent danger in CDCR's failure to conduct adequate screening for inmates 'prior' to forced double celling." Id. at 10–11. Plaintiff also alleges that "he was subjected to excessive risk to his safety, exposed to dangerous conditions with deliberate indifference and endured cruel and unusual punishment." Id. at 11. Lastly, Plaintiff asserts "CDCR Secretary, Director, and Warden failed to train CDCR officials in relation to screening and/or placement for double celling of inmates and the deficiency in training is closely related to his injury. . . ." Id.

## II. DISCUSSION

       Defendant Foulk moves to dismiss Plaintiff's claims against him for failing to allege facts showing Defendant Foulk's personal involvement. See ECF No. 87-1, pgs. 5–12. For the reasons outlined below, and as the Court has explained in the previous findings and recommendations, the Court continues to agree with Defendant Foulk that the second amended complaint fails to allege sufficient facts to sustain a claim.

       To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

///

///

///

Supervisory personnel are generally not liable under § 1983 for the actions of their employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations. See id. Supervisory personnel who implement a policy so deficient that the policy itself is a repudiation of constitutional rights and the moving force behind a constitutional violation may be liable even where such personnel do not overtly participate in the offensive act. See Redman v. Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc). A supervisory defendant may also be liable where he or she knew of constitutional violations but failed to act to prevent them. See Taylor, 880 F.2d at 1045; see also Starr v. Baca, 633 F.3d 1191, 1209 (9th Cir. 2011).

When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

As with the first amended complaint, Plaintiff's second amended complaint alleges that Defendant Foulk is the warden of HDSP. See ECF No. 84, pg. 2. Plaintiff asserts Defendant Foulk failed to train HDSP staff "in 1. Screening inmates for double celling, 2. Classifying inmates, and 3. Double celling inmates and the deficiencies in training caused Plaintiff's injuries." See id. at 4. Plaintiff also alleges on March 12, 2014, Defendant Foulk "failed to respond to Plaintiff's… form seeking a confidential interview to address his harm…. which policies requires [a] response in 3 days." Id. at 4–5. In this form, Plaintiff stated he was "…put in a situation [he is] not in agreement with against [his] will…" Id. at 7–8. There are no other allegations regarding Foulk.

///

The Court recommends dismissing Plaintiff's claims against Defendant Foulk. The complaint fails to state a claim against Foulk because there are no facts showing that Foulk was aware or should have been aware of Plaintiff's concerns. Plaintiff fails to plead facts showing Foulk had any involvement in Plaintiff's housing assignment. There are no facts that Foulk received the confidential request nor that Foulk was otherwise aware that Plaintiff was in danger.

Additionally, Plaintiff appears to assert an additional basis of respondeat superior theory of liability. The allegations are absent any specific actions taken by Foulk, or not taken, that may have caused the violations. As currently alleged, the complaint states conclusory statements of alleged "failures" that do not link Foulk to any affirmative act or omission that could violate Plaintiff's rights. Therefore, Plaintiff's complaint fails to state a claim as to Defendant Foulk. Because Plaintiff has not cured the defects as to Defendant Foulk identified in the Court's prior orders, further leave to amend would be futile and the undersigned recommends dismissing Defendant Foulk with prejudice.

### III. CONCLUSION

Based on the foregoing, the undersigned recommends as follows:

1. Defendant Foulk's motion to dismiss ECF No. 87, be granted.
2. Defendant Foulk be dismissed with prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court. Responses to objections shall be filed within 14 days after service of objections.

///
///
///
///
///

1  Failure to file objections within the specified time may waive the right to appeal.  See <u>Martinez v.
2  Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

4  Dated:  March 3, 2025

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE